1 | DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
2 | LUANN L. SIMMONS (S.B. #203526)
lsimmons@omm.com
3 | DAVID S. ALMELING (S.B. #235449)
dalmeling@omm.com
4 | AMY K. LIANG (S.B. #291910)
aliang@omm.com
5 | O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
6 | San Francisco, California 94111-3823
Telephone: +1 415 984 8700
7 |
MARK A. HAYDEN (*pro hac vice*)
8 | mhayden@omm.com
O'MELVENY & MYERS LLP
9 | Times Square Tower
7 Times Square
10 | New York, New York 10036-6537
Telephone: +1 212 326 2000
11 |
*Attorneys for Defendant*
12 | *Google LLC*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| SAFECAST LIMITED,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>GOOGLE LLC,<br><br>　　　　　　Defendant. | Case No. 5:23-cv-03128-BLF<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Date: January 18, 2024<br>Time: 9:00 a.m.<br>Courtroom: 1, 5th Floor<br>Judge: Honorable Beth L. Freeman |

## NOTICE OF MOTION AND MOTION

Defendant Google LLC ("Google") gives notice that on [date], at 9:00 a.m., in Courtroom 1, 5th Floor, 280 South 1st Street, San Jose, California 95113, before the Honorable Beth L. Freeman, Google will and hereby does move under Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing with prejudice the claims of infringement in the September 19, 2022 Amended Complaint filed by Plaintiff Safecast Limited ("Plaintiff" or "Safecast") (Dkt. 23). This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Amy Liang, the pleadings and records on file in this action, and such other written and/or oral argument as may be presented at or before the time this motion is heard by the Court.

## RELIEF SOUGHT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Google moves to dismiss with prejudice Safecast's Amended Complaint for two independent reasons: (1) the asserted U.S. Patent No. 9,392,302 is directed to patent-ineligible subject matter under 35 U.S.C. §101, and (2) Safecast has failed to plead a plausible claim of infringement.

Dated: August 11, 2023

Respectfully submitted,

By:  /s/ *David S. Almeling*
           David S. Almeling

Darin W. Snyder
Luann L. Simmons
David S. Almeling
Amy K. Liang
Mark A. Hayden

O'MELVENY & MYERS LLP

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1
II. STATEMENT OF RELEVANT FACTS ............................................................................... 2
    A. The '302 Patent ............................................................................................................ 2
    B. The Inventor's Descriptions Of The Patented Invention ............................................. 3
    C. The Accused Product ................................................................................................... 4
    D. Safecast's Other Litigations ......................................................................................... 4
III. LEGAL STANDARD ............................................................................................................ 5
    A. Patent Eligibility Under §101 ...................................................................................... 5
    B. Pleading A Plausible Claim Of Infringement ............................................................. 5
IV. ARGUMENT ......................................................................................................................... 6
    A. The Claims Of The '302 Patent Are Patent-Ineligible Under §101 ............................ 6
        1. *Alice* Step One: The Claims Are Directed To The Abstract Idea ................. 6
            a. "Automating Compliance…" Is Abstract ......................................... 6
            b. The Claims Do Not Recite An Improvement To Computers........... 8
        2. *Alice* Step Two: The Claims Lack An Inventive Concept .......................... 9
        3. Claim 1 Is Representative And The Remaining Claims Do Not Alter The Patentability Analysis ................................................................................. 10
    B. The Amended Complaint Fails To Plead A Plausible Claim Of Infringement ..... 12
V. CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ............................................................................................... 10

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ..................................................................................................... 5, 6, 8, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................5

*Bilski v. Kappos*,
  561 U.S. .....................................................................................................................................7

*Bot M8 LLC v. Sony Corp.*,
  4 F.4th 1342 (Fed. Cir. 2021) ................................................................................................ 5, 6

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) ...........................................................................................7

*Customedia Techs., LLC v. DISH Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020) ............................................................................................ 7, 9

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
  2022 WL 1556417 (N.D. Cal. May 17, 2022) ....................................................................... 14

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ..................................................................................................4

*Drone Labs, LLC v. Dedrone Holdings, Inc.*,
  2019 WL 4345955 (N.D. Cal. Sept. 12, 2019) ...................................................................... 14

*Fikre v. Fed. Bureau of Investigation*,
  738 F. App'x 545 (9th Cir. 2018) .......................................................................................... 15

*Free Stream Media Corp. v. Alphonso Inc.*,
  996 F.3d 1355 (Fed. Cir. 2021) ................................................................................................7

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010) .............5

*In re Ex Parte Application of Jommi*,
  2013 WL 6058201 (N.D. Cal. Nov. 15, 2013) .........................................................................3

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ............................................................................................... 10

*Intell. Ventures I LLC v. Erie Indem. Co.*,
  711 F. App'x 1012 (Fed. Cir. 2017) ...................................................................................... 11

*Intell. Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ................................................................................................6

*Intellectual Ventures I LLC v. Cap. One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ..................................................................................... 7, 8, 11

# TABLE OF AUTHORITIES
#### continued

**Page(s)**

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017) .................................................................................... 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) ................................................................................................... 5, 9

*Ottah v. Bracewell LLP*,
   2022 WL 16754378 (Fed. Cir. Nov. 8, 2022) ........................................................ 6, 12

*Papst Licensing GmbH & Co. KG v. Xilinx Inc.*,
   193 F. Supp. 3d 1069 (N.D. Cal. 2016), *aff'd*, 684 F. App'x 971 (Fed. Cir. 2017) ................. 10

*Safecast Ltd. v. AT&T Corp.*,
   No. 6:22-CV-00676, Dkt. 34 (W.D. Tex. June 26, 2023) ........................................ 14

*Ultramercial, Inc. v. Hulu*, LLC,
   772 F.3d 709 (Fed. Cir. 2014) .................................................................................... 7

**Statutes**

35 U.S.C. §101 ............................................................................................................ 1, 5, 15

**Other Authorities**

*FCC Regulatory Free Arena*, FCC (June 1, 2018, 11:15 am), https://www.fcc.gov/news-events/blog/2018/06/01/fcc-regulatory-free-arena ............................................................. 13

Google Advertising Policies Case Help, *Google Ads policies* (accessed Sept. 26, 2022), https://support.google.com/adspolicy/answer/6008942 ............................................ 14

Google Transparency Report, YouTube Community Guidelines enforcement (accessed Sept. 26, 2022), https://transparencyreport.google.com/youtube-policy/removals?hl=en ..................... 13

Michael O'Rielly | Commissioner, *FCC Regulatory Free Arena*, FCC (June 1, 2018, 11:15 am), https://www.fcc.gov/news-events/blog/2018/06/01/fcc-regulatory-free-arena ......................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Google LLC ("Google") files this motion because Plaintiff Safecast Limited's ("Safecast") Amended Complaint should be dismissed for two independent reasons: (1) the asserted U.S. Patent No. 9,392,302 ("'302 Patent") is directed to patent-ineligible subject matter under 35 U.S.C. §101, and (2) the Amended Complaint fails to plead a plausible claim of infringement under *Iqbal*.

First, the '302 Patent is directed to patent-ineligible subject matter under 35 U.S.C. §101. The claims are directed to the abstract idea of "automating compliance with local broadcasting regulations." The inventor himself admitted that the patent merely uses computers to automate a process that humans have been doing in broadcasting backrooms for decades. And the claims do not recite any improvement to computer technology, but rather use pre-existing conventional computer technology—known personal video recorders ("PVRs"), databases, and clocks—to apply regulations to filter content. Merely automating compliance with regulations using conventional computer technology is not patentable.

Second, the Amended Complaint has no allegations to plausibly support an infringement claim against the accused product, advertisements on YouTube TV. The claims of the '302 Patent require "automating compliance with local broadcasting regulations laid down by a broadcasting authority." But YouTube TV cannot infringe because it is a streaming service that does not broadcast, and thus is not subject to local broadcasting regulations. Safecast has made two attempts to plead infringement (Dkts. 1, 23), but both failed to identify any "local broadcasting time regulations laid down by a broadcasting authority" applicable to YouTube TV ads. Safecast's original Complaint (Dkt. 1) cited FCC regulations that do not apply to the accused YouTube TV ads. After Google filed its first Motion to Dismiss (Dkt. 20), Safecast filed an Amended Complaint (Dkt. 23), removing reliance on the FCC regulations and identifying no broadcasting regulations at all.

On both grounds, Google seeks to have the Amended Complaint dismissed with prejudice because Safecast has made two attempts to plead infringement (Dkts. 1, 23), and neither attempt overcomes these grounds. Further amendment would be futile.

## II. STATEMENT OF RELEVANT FACTS

### A. The '302 Patent

Safecast's Amended Complaint asserts direct infringement of at least Claim 1 of the '302 Patent. Dkt. 23 ¶ 17. Every claim of the '302 Patent recites "[a] system for automating compliance with local broadcasting regulations laid down by a local broadcasting authority." Declaration of Amy K. Liang Ex. A ('302 Patent); all exhibits cited herein are to the Liang Decl. To illustrate, Claim 1 recites:

> 1. A system for automating compliance with **local broadcasting regulations laid down by a broadcasting authority** and applicable to advertisements, said advertisements being provided during time-shifted viewing/listening comprises:
>
> . . .
>
> advertisement supply means to supply advertisements within the periodic breaks, each advertisement having associated therewith a header comprising a first field related to a **local broadcasting time regulation laid down by the broadcasting authority**, which **local broadcasting time regulation** restricts the time of day at which said advertisement may be shown, and a second field related to the number of times said advertisement has previously been shown during time-shifted viewing;
>
> rules database means containing rules relating to said **local broadcasting time regulation**;
>
> . . .
>
> control means arranged to read said first field and said clock signal and said rules database and to **apply said local broadcasting time regulation** to each advertisement before said advertisement is shown[.]

*Id.* at 8:28–54 (emphases added).

The specification of the '302 Patent identifies the alleged problem being addressed, explaining that "[i]f a programme is recorded and viewed at a different time of day, it contains all of the adverts which were originally broadcast, some of which may be unsuitable for that time"

due to regulations laid down by broadcasting authorities to "strictly control[]" "the time of day at which some adverts may be shown." *Id*. at 1:13–19, 1:30–35; *see also id*. at 1:19-26 (explaining that the UK television broadcasting authority forbids advertising alcoholic drinks before 7:30 p.m. when children are more likely to watch TV). To solve this alleged problem, the '302 Patent uses "a known personal video recorder" (PVR) that "stores adverts in an advertisement database 70, stores broadcast program segments in a program database 80, and broadcast rules in a rules database 90." *Id*. at Abstract. If no broadcasting time regulations forbid the playback of the advertisement at that time, then the original advertisement is presented. *Id*. If there are applicable broadcasting time restrictions, then the PVR finds a different advertisement from its database. *Id*. at 5:13–29.

### B.   The Inventor's Descriptions Of The Patented Invention

The named inventor of the '302 Patent, Alistair Kelman, has written to the United Kingdom's communications regulator, OFCOM, regarding Safecast's patents. In a July 4, 2019 letter, of which the Court can take judicial notice, Mr. Kelman wrote that Safecast's "patents [] can enable a regulated broadcaster to **automate** compliance with Ofcom and ASA rules in respect of video advertising." *See* Ex. B at 4 (July 4, 2019 Letter from A. Kelman to OFCOM) (emphasis in original); *see In re Ex Parte Application of Jommi*, 2013 WL 6058201, at *2 n.1 (N.D. Cal. Nov. 15, 2013) ("A court may take judicial notice of public records of governmental entities and authoritative sources of foreign law, including information posted on government websites, and may also take notice of undisputed information on a private entity's website."). In the letter, Mr. Kelman described Safecast's technology as follows:

> In 2014, Safecast determined that all video could be classified into six levels to cover the spectrum of content . . . this simple classification process, dividing video into appropriate classes, *mirrored the process that is regularly undertaken in the viewing rooms of the major UK television broadcasters*. Professional television schedulers within the major broadcasting networks are accustomed to reviewing a programme before it is broadcast and taking a view on the earliest time that the programme can be shown, based upon the television watersheds.

*See id*. at 3 (emphasis added).

### C. The Accused Product

Safecast's Amended Complaint identifies "Google-owned advertising products" as the "Accused Instrumentalities," (Dkt. 23 ¶ 15), but its allegations focus on Google's YouTube TV. Google's YouTube TV is "an on-demand and live TV streaming service" that "a user subscribes to." (Dkt. 23-2 at 2.)  Public evidence, subject to judicial notice, demonstrates that FCC broadcasting regulations do not regulate streaming services like YouTube TV, even if those services carry content from broadcast networks.  *See* Ex. C (Michael O'Rielly | Commissioner, *FCC Regulatory Free Arena*, FCC (June 1, 2018, 11:15 am), https://www.fcc.gov/news-events/blog/2018/06/01/fcc-regulatory-free-arena) (explaining that the FCC does not and cannot regulate streaming services, also called "over-the-top" services, and stating that "Commission DOES NOT regulate . . . over-the-top offerings" and that "current law prevents the Commission from having any role of oversight" over over-the-top streaming services); *see also Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) (courts may take judicial notice of governmental records for a Rule 12(b)(6) motion).

### D. Safecast's Other Litigations

Safecast has asserted the '302 Patent in seven other cases.  One case against AT&T Corp. was dismissed for one of the reasons that Google requests dismissal here—namely, the court found that Safecast's complaint failed to identify an applicable local broadcasting regulation as required by the claims and thus failed to plead a plausible claim of infringement. Case No. 6:22-cv-00676, Dkt. 34 (W.D. Tex. June 26, 2023).  And in another case, defendant DISH Network Corp. has filed a pending motion to dismiss under §101.  Case No. 1:22-cv-03037, Dkt. 31 (D. Co. Jan. 6, 2023).  A third case against Microsoft Corp. was recently transferred to S.D.N.Y., where the new court set a case management hearing.  Case No. 1:23-cv-05466, Dkt. 52 (S.D. N.Y. June 29, 2023).  In cases four through six against Paramount, NBC, and HBO, Safecast failed to respond to the defendants' motions to dismiss, and the court granted the defendants' motions to dismiss as unopposed.  *See* Case No. 6:22-cv-00682, Dkt. 20 (W.D. Tex. Dec. 16, 2022); Case No. 6:22-cv-00680, Dkt. 19 (W.D. Tex. Dec. 16, 2022); Case No. 6:22-cv-00679, Dkt. 19 (W.D. Tex. Dec. 16, 2022).  And in

the seventh case against Verizon, Safecast voluntarily dismissed the case while the defendants' motion to dismiss for improper venue was pending.  Case No. 6:22-cv-00683 (W.D. Tex. June 14, 2023).

### III.  LEGAL STANDARD

#### A.  Patent Eligibility Under §101

Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. §101 is a threshold inquiry on an issue of law that can be resolved on a motion to dismiss.  *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593, 602 (2010).

Determining whether a patent claim is patent ineligible involves a two-step analysis.  First, the court determines "whether the claims at issue are directed to a patent ineligible concept," i.e., laws of nature, natural phenomena, or abstract ideas.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).

If the patent claim covers an abstract idea, then in step two, courts look for an "inventive concept" by examining whether "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217-19 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)).  Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'"  *Id*. at 221 (quoting *Mayo*, 566 U.S. at 72).  A claim also fails to recite an inventive concept if it recites only insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment.  *Mayo*, 566 U.S. at 88.

#### B.  Pleading A Plausible Claim Of Infringement

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To plead infringement, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021).  A greater level of detail is required for elements that are

material to practicing the asserted claim. *Id*. at 1353.  For instance, in *Ottah v. Bracewell LLP*, the Federal Circuit affirmed a dismissal because the plaintiff failed to adequately plead infringement of a claim limitation that was "emphasized by [the patentee] during prosecution in response to a prior art rejection." 2022 WL 16754378, at *3 (Fed. Cir. Nov. 8, 2022).

## IV.   ARGUMENT

### A.   The Claims Of The '302 Patent Are Patent-Ineligible Under §101

#### 1.   *Alice* Step One: The Claims Are Directed To The Abstract Idea

The claims of the '302 Patent are invalid under §101 because they are directed to the abstract idea of "automating compliance with local broadcasting regulations." Ex. A ('302 Patent) at Claims 1 and 12.  The claims do not recite specific improvements to computer capabilities, but instead invoke generic computer components to automate a process that has been performed "by a human, mentally or with pen and paper." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016).

##### a.   "Automating Compliance…" Is Abstract

The claims all recite a system for "automating compliance with local broadcasting regulations" laid down by a broadcasting authority. Ex. A at Claims 1 and 12.  And Safecast itself has admitted that the invention of the '302 Patent is merely to use computers to automate the human process of filtering content to comply with local broadcasting time regulations.  In a 2019 letter to the United Kingdom's broadcasting regulator, OFCOM, the named inventor and Safecast's CEO and co-founder, Alistair Kelman, urged adoption of Safecast's technology, stating that Safecast "found that this simple classification process, dividing video into appropriate classes, *mirrored the process that is regularly undertaken in the viewing rooms of the major UK television broadcasters*." *See* Ex. B (July 4, 2019 Letter from Safecast to OFCOM) at 3 (emphasis added). Mr. Kelman further explained that "Safecast has granted patents which can enable a regulated broadcaster to **automate** compliance with Ofcom and ASA rules." *Id.* at 4 (emphasis in original). Thus, by Safecast's own admission, the claimed invention merely "automate[s]" a process that humans have been performing.  This is the hallmark of an abstract idea.  *See Symantec Corp.*, 838 F.3d at 1318 (quoting *Alice*, 573 U.S. at 219 (quoting *Bilski*, 561 U.S. at 611)) ("The category of

abstract ideas embraces 'fundamental economic practice[s] long prevalent in our system of commerce,' [] including 'longstanding commercial practice[s]' and 'method[s] of organizing *human activity*.'") (emphasis added).

Federal Circuit precedent on similar claims confirms that "automating compliance with local broadcasting regulations," including as part of targeted advertising, is an abstract idea that is not patent eligible under §101.

- In *Intellectual Ventures I LLC v. Capital One Bank (USA)*, the court found that "[t]ailoring information based on the time of day of viewing is also an abstract, overly broad concept long-practiced in our society. There can be no doubt that television commercials for decades tailored advertisements based on the time of day during which the advertisement was viewed." 792 F.3d 1363, 1370 (Fed. Cir. 2015).

- In *Free Stream Media Corp. v. Alphonso Inc.*, the court invalidated "claims [] directed to: (1) gathering information about television users' viewing habits; (2) matching the information with other content (i.e., targeted advertisements) based on relevancy to the television viewer; and (3) sending that content to a second device," as "merely improv[ing] the abstract idea of targeted advertising." 996 F.3d 1355, 1362 (Fed. Cir. 2021).

- In *Customedia Technologies, LLC v. DISH Network Corp.*, the court invalidated claims regarding automated delivery of specific advertising data to be saved and played from a multimedia recorder for being directed to "the abstract concept of delivering targeted advertising using a computer only as a tool." 951 F.3d 1359, 1364 (Fed. Cir. 2020).

Indeed, the Federal Circuit has invalidated claims directed to targeting advertisements in numerous cases. *See, e.g., Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019) ("Targeted marketing is a form of 'tailoring information based on [provided] data,' which we have previously held is an abstract idea. The concept is a 'fundamental practice' that dates back to newspaper advertisements."); *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014) ("The process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the

media, and receiving payment from the sponsor of the ad all describe an abstract idea, devoid of a concrete or tangible application."). The idea that the claims are directed to—automating compliance with local broadcasting regulations—is thus abstract.

### b. The Claims Do Not Recite An Improvement To Computers

The claims do not recite an improvement to computing technology, but instead merely invoke generic, well-known computing technology to execute the abstract idea of "automating compliance with local broadcasting regulations." *See, e.g.*, Ex. A ('302 Patent) at Claims 1 and 12. Claim 1 recites a system comprising five different functionally claimed "means." *Id.* at Claim 1. The parties have agreed that three of the means—"programme supply means," "advertisement supply means," "rules database means"—recite nothing more than a PVR with a hard disc that stores and supplies programs, advertisements, and rules. *See* Dkt. 54 at 5–7. The fourth means, the "clock means," merely "suppl[ies] a real-time clock signal." Ex. A ('302 Patent) at Claim 1. And the fifth means—"control means"—simply reads metadata from the advertisement headers, the "clock signal and said rules database [] to apply said local broadcasting time regulation." *Id*. The claims thus recite generic, functional components and "stat[e] an abstract idea while adding the words 'apply it with a computer,'" which is not patentable under §101. *Alice*, 573 U.S. at 208.

*Intellectual Ventures I LLC v. Capital One Bank (USA)* is on point. 792 F.3d at 1369-71. There, the Federal Circuit invalidated claims that were directed to "[a] system for providing web pages accessed from a web site in a manner which presents the web pages tailored to an individual user" "based on the time of day at which the user viewed the content." *Id.* . The claims were not directed to an improvement to computers, but instead recited "entry of data into a computer database, the breakdown and organization of that entered data according to some criteria . . . and the transmission of information derived from that entered data to a computer user, all through the use of conventional computer components, such as a database and processors, operating in a conventional manner." *Id*. at 1371. Likewise, here, the claims of the '302 Patent recite using known PVRs to perform their known functions of storing and supplying programs and advertisements, and using data to filter content based on time of day at which the user viewed the content. And any alleged improvements relating to speed or automation do not render the claimed

invention patentable. Indeed, in *Customedia Technologies*, the Federal Circuit reviewed comparable claims covering the use of computers to automate targeted advertising processes and held that "generic speed and efficiency improvements [are] inherent in applying the use of a computer to any task" and the "claimed invention is at most an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool." 951 F.3d at 1365. The claims therefore fail to recite an improvement to computing technology, but instead only apply known technology to the abstract idea of "automating compliance with local broadcasting regulations."

### 2. *Alice* Step Two: The Claims Lack An Inventive Concept

The claims of the '302 Patent fail to disclose "an '"inventive concept"'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 73). As discussed above (*supra* IV.A.1.b), the system of Claim 1 comprises five "means" that recite nothing more than functionally-claimed components of known PVRs and the concept of applying criteria to filter content.

The specification of the '302 Patent admits that the hardware for implementing the claimed methods were known. For example, the specification repeatedly refers to the "known PVR." *Id.* at 2:14-17; *id.* at 1:61-62, 3:34. As such, the components fail to transform the '302 Patent's abstract idea into an inventive concept. *See, e.g.*, *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1378 (Fed. Cir. 2017) ("[Where] the only components disclosed in the specification for implementing the asserted method claims are unambiguously described as 'conventional' . . . [t]hese components do not supply an inventive concept."). Nor do the claims recite an inventive combination or technique to achieve a technological improvement. Rather, they recite known computing components and processes to automate the human process of applying rules to comply with broadcasting time regulations. As in *Customedia Technologies*, recording media and ads and controlling what ads are played based on advertising data stored on the recording device is not inventive, even if the stored advertising data is "specifically identified advertising data." 951 F.3d at 1361.

Moreover, the claimed "means" for performing the functions are recited using "functional

1  language," without explaining how to implement the invention in an unconventional way, which
2  fails to confer eligibility under *Alice* step two.  The Federal Circuit has instructed that "vague,
3  functional descriptions of server components are insufficient to transform the abstract idea into a
4  patent-eligible invention."  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir.
5  2016).  The Federal Circuit thus routinely rejects results-focused claims as "do[ing] no more than
6  describ[ing] a desired function or outcome, without providing any limiting detail that confines the
7  claim to a particular solution."  *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269
8  (Fed. Cir. 2016).  The '302 Patent claims do little more than state the desired outcome of
9  "automating compliance with local broadcasting regulations," recite a database that stores content
10 and rules related to such regulations, and say "apply said local broadcasting time regulation."  Ex.
11 A ('302 Patent) at Claim 1.

### 3. Claim 1 Is Representative And The Remaining Claims Do Not Alter The Patentability Analysis

Courts do not need to separately address each claim in a §101 analysis and may instead use a representative claim to analyze claims together if the claims are substantially similar and directed to the same abstract idea.  *See Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, 193 F. Supp. 3d 1069, 1085 (N.D. Cal. 2016), *aff'd*, 684 F. App'x 971 (Fed. Cir. 2017).  Though dependent claims may "have a narrower scope than the representative claims," when they merely "recite well-known, routine, and conventional functions," they too will rise and fall with the independent claims.  *Id*. at 1349.  Here, all of the claims are directed to the same abstract idea of "automating compliance with local broadcasting regulations."  Ex. A ('302 Patent) at Claim 1 and 12.  None recite limitations that would alter the §101 analysis.

Both independent claims of the '302 Patent, Claims 1 and 12, recite a system for "automating compliance with local broadcasting regulations."  *Id*.  Thus, every claim of the '302 Patent is directed to this abstract idea.  Independent Claim 12 is materially the same as claim 1, but specifies that the system is a "PVR (personal video recorder)" with conventional inputs and outputs inherent to a PVR.  *Id.*

The dependent claims of the '302 Patent fail to add any inventive concepts.

- Dependent Claims 2, 3, and 11 recite additional advertisement selection criteria or header metadata. *See* Ex. A ('302 Patent) at Claims 2 (keywords), 3 (day of the week), 11 (interactive or passive). But performing a selection based on criteria is patent-ineligible. *See Intell. Ventures I LLC v. Erie Indem. Co.*, 711 F. App'x 1012, 1015 (Fed. Cir. 2017) (holding ineligible claim that identified data "based on one of three selection criteria").

- Dependent claims 8, 9, 10, 13, and 15 recite characteristics that are inherent to the underlying system of claim 1, including that: if an advertisement is forbidden, the system will search for another (claim 8); the system will only play advertisements that are allowed (claim 13); the advertisement database includes other advertisements to replace the ones that are forbidden (claim 9); the system will only play advertisements that fit in the advertisement time slot (claim 10); the system updates the second field to count when an advertisement is played (claim 15). Ex. A ('302 Patent) at Claims 8, 9, 10, 13, and 15. None of these limitations materially alter what was already recited in claim 1.

- Dependent Claims 4, 5, and 14 limit the type of advertisements to interactive or reward-based ads. *See, e.g.*, Ex. A ('302 Patent) at Claim 4. But this is a field of use limitation, not an inventive concept. *See Cap. One Bank*, 792 F.3d at 1366 ("[A]bstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment.").

- Claim 6 recites that the programs include information about the duration of program segments and advertising breaks, but the patent admits that "television programme supported by advertising breaks" was a "known format," and duration information has no impact on the claimed functionality for "automating compliance with local broadcasting regulations." Ex. A ('302 Patent) at 2:36-41.

- Claims 7 and 16 merely recite known hardware—a PVR and a television set. *Id*. at Claims 7 and 16.

Claim 1 is thus representative of all claims of the '302 Patent, and all of the '302 Patent claims are invalid under §101 for the reasons described with respect to Claim 1 above.

### B. The Amended Complaint Fails To Plead A Plausible Claim Of Infringement

Safecast has not pleaded and cannot plausibly plead infringement of the '302 Patent claims, which all recite a system for "automating compliance with local broadcasting regulations laid down by a broadcasting authority" wherein the regulation is a "local broadcasting *time* regulation." Ex. A ('302 Patent) at Claims 1, 12. The requirements that the broadcasting regulation must be a "time regulation" and that it must be "laid down by a broadcasting authority" are critical because these limitations were added to distinguish the claims from prior art during prosecution. Ex. D ('302 Patent Prosecution History (excerpts)) at 16, 19, 37, 39. Thus, to plead infringement, Safecast must at least plead detailed factual allegations that plausibly support that the accused YouTube TV product meets those two limitations. *See Ottah*, 2022 WL 16754378, at *3. But YouTube TV is an over-the-top streaming service that does not broadcast and is not subject to any broadcasting regulation. Thus, Safecast has not identified and cannot identify any "local broadcasting time regulation" "laid down by [a] broadcasting authority" that is applicable to YouTube TV.

Safecast's original Complaint alleged infringement by YouTube TV ads by citing that "the Federal Communications Commission ('FCC') regulates local broadcasting times depending on the content shown." Dkt. 1-1 at 20. But as set forth in Google's Motion to Dismiss the original Complaint, YouTube TV does not broadcast and is, therefore, not subject to FCC regulations. Dkt. 24. Safecast then abandoned its reliance on FCC broadcasting regulations and filed an Amended Complaint that does not identify any applicable broadcasting regulation at all, let alone a broadcasting "time regulation" that is "laid down by a broadcasting authority." Instead, Safecast tries to salvage its infringement claim with a new set of allegations: (1) YouTube TV ads "abide by laws" (Dkt. 23-2 at 1); (2) Google enforces its own internal policies called the YouTube Community Guidelines (*id*.); and (3) Google has internal Google Advertising Policies (*id*. at 5). None of those allegations—discussed separately below—refer to broadcasting regulations, much less any broadcasting time regulation laid down by a broadcasting authority.

First, while YouTube TV complies with applicable laws and regulations, no local broadcasting time regulation is applicable to YouTube TV because YouTube TV is not a broadcasting service. As Safecast's Amended Complaint admits, YouTube TV is a subscription

streaming service that provides "on-demand and live TV streaming service" and "works with streaming media players." Dkt. 23-2. Streaming services do not broadcast and are therefore not subject to broadcasting regulations. For instance, the FCC has stated that its broadcasting regulations do not apply to streaming services like YouTube TV. Ex. C (Michael O'Rielly | Commissioner, *FCC Regulatory Free Arena*, FCC (June 1, 2018, 11:15 am), https://www.fcc.gov/news-events/blog/2018/06/01/fcc-regulatory-free-arena) (the "Commission DOES NOT regulate . . . over-the-top offerings") (emphasis in original). Safecast's citation to YouTube TV's carrying of content from "broadcast" networks is inapposite, as that refers to the source of content rather than the act of broadcasting. Dkt. 23-2 at 2–3. Indeed, the cited evidence demonstrates that YouTube TV does not broadcast content—the broadcast networks do. *Id*.

Second, the cited YouTube Community Guidelines do not apply to YouTube TV (or ads played on YouTube TV), but rather to the YouTube service, which is a different product that is not accused in this litigation. *See* Ex. E (Google Transparency Report, YouTube Community Guidelines enforcement (accessed Sept. 26, 2022), https://transparencyreport.google.com/youtube-policy/removals?hl=en) (providing no mention of YouTube TV). Nor does the cited YouTube Community guidelines page mention any regulations, much less local broadcasting time regulations laid down by a broadcasting authority. *Id*. Instead, that page explains that to protect its community, Google developed internal guidelines to ensure that YouTube does not have unsafe content and terminates channels and removes videos with such content. *Id*. Those YouTube Community Guidelines are "[YouTube's] policies," not broadcasting regulations "laid down by a broadcasting authority." *Id*. And the cited page does not mention any time restrictions because it says instead that the offending content is removed from YouTube completely. *See id*. ("When a channel is terminated, all of its videos are removed."). In sum, the YouTube Community Guidelines and policies cannot be the claimed "local broadcasting time regulation" because: (1) these guidelines do not apply to YouTube TV; (2) they are not "broadcasting" regulations because YouTube TV does not broadcast; (3) they are not "time" regulations because the offending content is removed from the platform; and (4) they are not regulations "laid down by a broadcasting authority" because they are policies created by YouTube.

Third, Safecast's citation to the Google Advertising Policies page fails for the same reasons. In fact, the page that Safecast cites as purported support confirms that Google has created its own policies based on a review of a number of factors, including user feedback, online trends and practices, industry norms, and regulations. Ex. F (Google Advertising Policies Case Help, *Google Ads policies* (accessed Sept. 26, 2022), https://support.google.com/adspolicy/answer/6008942). It does not mention any "broadcasting regulations," much less any regulations "laid down by a broadcasting authority" that have "time of day" restrictions for showing ads. *Id*.

Another court has granted a motion to dismiss Safecast's deficient infringement pleadings on these same grounds. In *Safecast Ltd. v. AT&T Corp.*, the court dismissed Safecast's "implausible infringement allegations" regarding defendant AT&T's "on-demand and live TV streaming servce [*sic*]" because "Safecast fail[ed] to identify a local broadcasting time regulation issued by a broadcasting authority, as required by the claim limitations, that applies to Internet streaming services." No. 6:22-CV-00676, Dkt. 34 at 3, 5-6 (W.D. Tex. June 26, 2023).

Courts in this district have granted motions to dismiss against similarly deficient infringement pleadings. For example, in *Drone Labs, LLC v. Dedrone Holdings, Inc.*, 2019 WL 4345955, at *4 (N.D. Cal. Sept. 12, 2019), the court dismissed with prejudice an amended complaint because for a limitation requiring "receiving identifying information from a transponder signal from the drone," the amended complaint made no reference to the accused products actually receiving anything from a transponder signal from the drone. The court dismissed with prejudice because plaintiff already had "the opportunity to file the SAC after it failed to adequately plead all claim limitations." *Id.* In *Cyph, Inc. v. Zoom Video Communications, Inc.*, the claim chart attached to the complaint cited source documents that "do not necessarily coincide with the claim language at issue" and, therefore, failed to plausibly plead that the claim limitation was met. 2022 WL 1556417, at *3 (N.D. Cal. May 17, 2022).

Likewise, here, Safecast's Amended Complaint is insufficient because it fails to identify any "broadcasting authority" and any "local broadcasting time regulation" to support direct infringement by YouTube TV, which is an over-the-top, Internet streaming service. This failure to identify critical claim elements renders its infringement allegation implausible. And Safecast's

failure to correct this flaw, despite multiple prior motions to dismiss that identified this deficiency, supports that amendment would be futile and that the Amended Complaint should be dismissed with prejudice. *See Fikre v. Fed. Bureau of Investigation*, 738 F. App'x 545, 546 (9th Cir. 2018) (affirming dismissal with prejudice where plaintiff "had several opportunities to amend [his] complaint and repeatedly failed to cure deficiencies").

## V. CONCLUSION

Google respectfully requests the Court dismiss the Amended Complaint with prejudice for two independent reasons: (1) the '302 Patent's claims are patent-ineligible under 35 U.S.C. §101, and (2) Safecast cannot identify any "broadcasting authority" or any "local broadcasting time regulation" with which YouTube TV automates compliance because YouTube TV is not a broadcasting service.

Dated: August 11, 2023                     Respectfully submitted,

By:   /s/ *David S. Almeling*
            David S. Almeling

DARIN W. SNYDER
LUANN L. SIMMONS
DAVID S. ALMELING
AMY K. LIANG
MARK A. HAYDEN
O'MELVENY & MYERS LLP

*Attorneys for Defendant Google LLC*